```
           UNITED STATES DISTRICT COURT
         SOUTHERN DISTRICT OF WEST VIRGINIA
                   AT CHARLESTON
```

DIANA MOSS,

    Plaintiff,

v.                               Civil Action No. 2:19-cv-00409

ERIE INSURANCE PROPERTY AND
CASUALTY COMPANY,

    Defendant.


## MEMORANDUM OPINION AND ORDER

Pending are (1) defendant Erie Insurance Property and Casualty Company's motion to dismiss, filed October 31, 2019, and (2) plaintiff Diana Moss's motion to amend the complaint, filed November 14, 2019.


### I. Background

Defendant Erie Insurance Property and Casualty Company ("Erie") removed this case on May 24, 2019 after plaintiff, acting pro se, initiated this action, only against Erie, in the Circuit Court of Kanawha County, West Virginia on April 26, 2019. See Not. Removal, ECF No. 1. The self-styled "Petition" filed in state court alleged that the parties were unable to settle an insurance claim related to plaintiff's horse trailer. See Pet., ECF No. 1-1 ("Pet."). Erie's adjustor, "Mike Walker"

(or "Mr. Walker"), had allegedly determined that the market value for plaintiff's horse trailer was $71,450.00. Id. The Petition alleged that Mr. Walker "acted in bad faith because he offered substantially less money than true value. He has [failed] to try to negotiate on settlement. He has not disclosed a policy and his quotes were falsely created." Notably, the Petition states that Mr. Walker "states his offer was made 2 years ago." Id.

On September 17, 2019, Magistrate Judge Tinsley issued an order and notice that set the initial schedule in this case, which allowed the parties until October 31, 2019 to amend the pleadings or join additional parties. After retaining counsel in this case, plaintiff filed a "Verified Amended Complaint" on October 17, 2019 without filing a corresponding motion for the court's leave. See Verified Am. Compl., ECF No. 9 ("Verified Am. Compl."). The Verified Amended Complaint adds Michael Walker as a named defendant for the first time and contains three claims: (Count I) Breach of Contract Failure to Make a Commercially Reasonable Offer; (Count II) Common Law Bad Faith; and (Count III) Unfair Trade Practices pursuant to W. Va. Code § 33-11-4.

The Verified Amended Complaint alleges that plaintiff's 2016 Hoosier Desperado "Outlaw Series" 8415LS horse

trailer suffered flood damage on April 29, 2017. Verified. Am. Compl. ¶ 6. The trailer was insured by Erie's automobile insurance policy, which plaintiff attached for the first time as Exhibit 1 to her Verified Amended Complaint. Id. ¶ 7. As the trailer manufacturer, "Hoosier," is now out of business, plaintiff provided Mr. Walker a quote of a 2015 model Hoosier Desperado 8415LS horse trailer for $104,623.00. Id. ¶¶ 10-12. Despite plaintiff's efforts, Mr. Walker provided plaintiff with quotes of $72,900 and $70,000 based on estimates he received from the "Mail Trailer Sales" dealership in Indiana and the "Lucky Bee Trailers" dealership in Virginia. Id. ¶ 13. When plaintiff contacted those dealerships, "they denied they had spoken with Michael Walker, or anyone at all, to provide quotes as to the ACV of the horse trailer." Id. ¶ 14. Nonetheless, Erie and Mr. Walker allegedly made an offer of approximately $74,538.00 based on these dealership estimates. Id. ¶ 15. This offer[1] was repeated several times up until it was made last on May 29, 2018. Id. ¶ 16.

---

[1] Insofar as the Petition alleged that Mr. Walker had "determined that the market value for [plaintiff's] trailer is $71,450.00," see Pet., plaintiff's amended pleadings and response to defendant's motion to dismiss indicate that the actual offer was for $74,538.00. See Pl.'s Resp. to Mot. Dismiss 2, ECF No. 16. Erie does not dispute that the offer was for $74,538.00. See Erie's Mem. Supp. Mot. Dismiss 6, ECF No. 12.

On October 31, 2019, Erie filed a motion to dismiss. See Erie's Mot. Dismiss, ECF No. 11. Erie argues plaintiff failed to obtain "the opposing party's written consent or the court's leave" pursuant to Fed. R. Civ. P. 15(a)(2). Moreover, Erie argues that amending the pleading would be "futile" because all three claims would not survive a motion to dismiss. See Erie's Mem. Supp. Mot. Dismiss, ECF No. 12 ("Erie's Mem."). First, Erie argues that plaintiff fails to state a claim for breach of contract because the insurance policy never references a "commercially reasonable offer," and therefore the failure to make a "commercially reasonable offer" is not a breach of contract. Id. at 7. Second, this inability to "substantially prevail" on her breach of contract claim is purportedly dispositive on plaintiff's claim of bad faith. Id. at 8. Finally, Erie argues that Count III is barred by a one-year statute of limitations period. Id. In the alternative, Erie attaches an answer to the Verified Amended Complaint as Exhibit A to its motion. See Answer, ECF No. 11-1.

On November 14, 2019, plaintiff filed her response to the motion to dismiss, explaining that counsel interpreted the September 17, 2019 scheduling order to mean plaintiff could file an amended complaint without a motion. Pl.'s Resp. to Mot. Dismiss, ECF No. 16 ("Pl.'s Resp."). In the event this

interpretation was mistaken, plaintiff filed a motion to amend the complaint on November 14, 2019 as well.  See Pl.'s Mot. Am. Compl., ECF No. 15 ("Pl.'s Mot. Am.").  Plaintiff's response adds that "in the interest of [] judicial efficiency, Plaintiff will move to amend the Complaint and remove the words 'commercially reasonable offer' from Count I."  Pl.'s Resp. 4.  The "Second Amended Complaint" is attached as Exhibit 1 to plaintiff's motion to amend.  See Second Am. Compl., ECF No. 15-1 ("Second Am. Compl.").  The Second Amended Complaint removes the references to a "commercially reasonable offer" under Count I, alleging instead that Erie and Mr. Walker failed to pay Actual Cash Value (or "ACV") under the insurance policy.  Verified Am. Compl. ¶¶ 22–26; Second Am. Comp. ¶¶ 22–26.[2]  In addition to explaining this and other minor changes, plaintiff's response argues that the statute of limitations does not bar Count III because the continuing tort doctrine applies.  Pl.'s Resp. 2.

In its opposition to the motion to amend and reply in support of its motion to dismiss, Erie argues that

---

[2] The Second Amended Complaint also changes the title of Count I from "Breach of Contract Failure to Make a Commercially Reasonable Offer" to simply "Breach of Contract."
The phrase "commercially reasonable offer" reappears only under Counts II-III.  Second Am. Compl. ¶¶ 30, 35.

plaintiff's amended complaint has no legal effect and, in any case, the November 14th motion provides no basis for allowing plaintiff to add new causes of action and a new party after this delay. See Erie's Opp. to Pl.'s Mot. Am. Compl., ECF No. 17 ("Erie's Opp."); Erie's Reply, ECF No. 18 ("Erie's Reply").

## II. Governing Standard

When moving to amend the pleadings after the deadlines provided in the scheduling order, "a party must first demonstrate 'good cause' to modify the scheduling order deadlines" under Rule 16(b)(4) "before also satisfying the Rule 15(a)(2) standard for amendment." Cook v. Howard, 484 F. App'x 805, 814-15 (4th Cir. 2012) (citing Nourison Rug Corp. v. Parvizian, 535 F.3d 295, 298-99 (4th Cir. 2008)); see also Hawkins v. Leggett, 955 F.Supp.2d 474, 497-99 (D. Md. 2013) (stating and applying two-part test).

Rule 16(b)(4) provides that "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Factors to consider include the "danger of prejudice to the non-moving party, the length of delay and its potential impact on judicial proceedings, the reason for the delay, and whether the movant acted in good faith." Tawwaab v. Virginia Linen Serv., Inc., 729 F. Supp. 2d

757, 768–69 (D. Md. 2010) (citations omitted). "Rule 16(b)'s good cause standard focuses on the timeliness of the amendment and the reasons for its tardy submission; the primary consideration is the diligence of the moving party." Montgomery v. Anne Arundel Cty., Maryland, 182 F. App'x 156, 162 (4th Cir. 2006) (citations omitted); see also Hawkins, 955 F.Supp.2d at 498 ("The movant satisfies the good cause requirement by showing that, despite diligence, the proposed claims could not have been reasonably brought in a timely manner.").

Insofar as they display a lack of diligence, attorney inadvertence or carelessness do not constitute good cause. See O'Connell v. Hyatt Hotels of Puerto Rico, 357 F.3d 152, 155 (1st Cir. 2004) (denying motion to amend complaint filed 5 months after scheduling order deadline where plaintiffs "blame[d] the error on a failure of communication between local counsel in Puerto Rico and lead counsel in Pennsylvania"); Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992) ("[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief."); Tawwaab, 729 F. Supp. 2d at 769.

If the proposed amendment passes the Rule 16(b) test, a party may amend the pleadings under Rule 15(a)(2) by obtaining "the opposing party's written consent or the court's leave."

Fed. R. Civ. P. 15(a)(2).  Rule 15(a)(2) instructs that "[t]he court should freely give leave when justice so requires," id., which has been held to disallow an amendment "only where it would be prejudicial, there has been bad faith, or the amendment would be futile."  Nourison, 535 F.3d at 298 (citing HCMF Corp. v. Allen, 238 F.3d 273, 276–77 (4th Cir. 2001)).  The existence of prejudice to an opponent "is reason sufficient to deny amendment," and the "absence of prejudice, though not alone determinative, will normally warrant granting leave to amend." Davis v. Piper Aircraft Corp., 615 F.2d 606, 613 (4th Cir. 1980) (finding no prejudice where a defendant "was from the outset made fully aware of the events giving rise to the action"). "[M]ere delay absent any resulting prejudice or evidence of dilatoriness [is] not sufficient justification for denial." Ward Elecs. Serv., Inc. v. First Commercial Bank, 819 F.2d 496, 497 (4th Cir. 1987) (alternations omitted) (citations omitted); Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999).

Even in the absence of prejudice, an amendment is futile "if the proposed amended complaint fails to satisfy the requirements of the federal rules," such as Rule 12(b)(6).  U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 376 (4th Cir. 2008) (quoting United States ex rel. Fowler v. Caremark RX, LLC, 496 F.3d 730, 740 (7th Cir. 2007)).  The

proposed amendment may also be futile if "the statute of limitations bars a cause of action." United States v. Pittman, 209 F.3d 314, 317 (4th Cir. 2000) (citations omitted).

### III. Discussion

First, Erie argues that plaintiff's failure to obtain leave under Rule 15 means the amended complaint has no legal effect. Although the Verified Amended Complaint was entered on the docket within the deadline for amending the pleadings under the September 17, 2019 scheduling order, "an amended complaint is not actually 'filed'" under Rule 15 "until the court grants 'leave' for the amendment." Angles v. Dollar Tree Stores, Inc., 494 F. App'x 326, 329 (4th Cir. 2012) (citing Murray v. Archambo, 132 F.3d 609, 612 (10th Cir. 1998)). Plaintiff did not request leave until after the deadline to amend the pleadings or to join additional parties had expired. Therefore, inasmuch as plaintiff did not originally move to amend the complaint, plaintiff must show that good cause exists to modify the court's scheduling order.

Neither Erie nor plaintiff directly addresses Rule 16(b)'s good cause standard. Instead, Erie focuses to the futility of plaintiff's motion, relying on U.S. ex rel. Mathews v. HealthSouth Corp., 332 F.3d 293 (5th Cir. 2003); Erie's Reply

9

2. In Mathews, the plaintiff also submitted an amended complaint without first requesting leave of court. Id. at 294. By the time the plaintiff later re-delivered the amended complaint with a proper request for leave, the statute of limitations on the plaintiff's newly added age discrimination claim had expired. Id. On appeal, the Fifth Circuit held that the newly added claim was barred by the statute of limitations because the amended complaint was only deemed filed after it was resubmitted with a request for leave. Id. at 296-97. It reasoned that "failing to request leave from the court when leave is required makes a pleading more than technically deficient. The failure to obtain leave results in an amended complaint having no legal effect." Id. at 296.

Mathews recognized the common exception, however, that "an untimely amended pleading served without judicial permission may be considered as properly introduced when leave to amend would have been granted had it been sought and when it does not appear that any of the parties will be prejudiced by allowing the change." Id. at 295-96 (quoting 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1484 (3d ed. 1990)). The exception did not apply in Mathews "because the loss of the affirmative defense of statute of limitations would prejudice" the defendant if the court

considered the amended complaint filed without leave of court. Id. at 297.

Here, there is no such indication of prejudice. Plaintiff's untimely motion to amend explains that "counsel previously filed a verified amended complaint without a motion to amend due to a possible misinterpretation of this Honorable Court's scheduling order." Pl.'s Mot. Am. 2. While this lack of prejudice "will normally warrant granting leave to amend" under Rule 15, see Davis, 615 F.2d at 613, the court's foremost consideration is the plaintiff's diligence under Rule 16(b). Montgomery, 182 F. App'x at 162.

The misinterpretation by plaintiff's counsel is understandable and there is evidence that plaintiff acted diligently here. The Verified Amended Complaint — which plaintiff attempted to timely file — and the Second Amended Complaint are nearly identical, except for the references to a "commercially reasonable offer" that have been eliminated from Count I. Plaintiff did not seek to add a whole new claim or new party in the interim, and plaintiff only barely missed the court-imposed deadline. This is not a situation involving a significant delay between the scheduling order deadlines and plaintiff's motion. See, e.g., Tesone v. Empire Mktg. Strategies, 942 F.3d 979, 989 (10th Cir. 2019) (finding lack of

good cause to amend scheduling order where plaintiff "missed the initial deadline, expressed an intent to file a motion to extend time, and then inexplicably waited for seven months to file her motion"); Whichard v. Specialty Restaurants Corp., 220 F.R.D. 439, 440 (D. Md. 2004) (denying motion to amend complaint filed five months after scheduling order deadline and adding a new party therein).  Plaintiff here moved to amend the complaint only a month after filing the Verified Amended Complaint and only 14 days after the deadline set forth in the court's scheduling order.

"[A] motion to amend should be made as soon as the necessity for altering the pleading becomes apparent." Deasy v. Hill, 833 F.2d 38, 41 (4th Cir. 1987).  Under the circumstances noted, plaintiff remedied its initial defect with relative diligence.  Inasmuch as the court finds good cause shown under Rule 16(b), the court turns to whether to grant leave to amend under Rule 15(a)(2).

First, the court does not find that there has been undue delay.  As explained above, the motion was filed only 14 days late and Erie was already aware of the new causes of action and new party added to the Verified Amended Complaint before the October 31, 2019 deadline.  Discovery is not set to close until May 26, 2020 and trial is scheduled for October 6, 2020.  Thus,

there is no apparent undue delay that would prejudice Erie when plaintiff filed the motion to amend well before these deadlines. See, e.g., Simmons v. Justice, 196 F.R.D. 296, 297 (W.D.N.C. 2000) (denying leave under Rule 15 where "the 'undue delay' is apparent: the moving defendants waited nearly five months, until discovery closed and the last day for filing dispositive motions").

Second, the court considers whether the amendment would be futile. The insurance policy states, in relevant part: "'We' will pay Actual Cash Value for 'loss' to stolen or damaged property" and that "Actual Cash Value reflects fair market value, age and condition of the property at the time of the 'loss.'" Second Am. Compl., Ex. 1 at 7.

"A claim for breach of contract requires proof of the formation of a contract, a breach of the terms of that contract, and resulting damages." Sneberger v. Morrison, 776 S.E.2d 156, 171 (W. Va. 2015). To state a claim for breach of contract, plaintiff "must allege facts sufficient to support the following elements: the existence of a valid, enforceable contract; that the plaintiff has performed under the contract; that the defendant has breached or violated its duties or obligations under the contract; and that the plaintiff has been injured as a result." Exec. Risk Indem., Inc. v. Charleston Area Med. Ctr.,

Inc., 681 F. Supp. 2d 694, 714 (S.D.W. Va. 2009) (citing 23 Williston on Contracts § 63:1 (Richard A. Lord, ed. 4th ed. West 2009)). Moreover, "the West Virginia Supreme Court of Appeals has 'declined to recognize an independent claim for a breach of the common law duty of good faith,' and has instead held that such a claim sounds in breach of contract." Powell v. Bank of Am., N.A., 842 F. Supp. 2d 966, 981 (S.D.W. Va. 2012) (citing Doyle v. Fleetwood Homes of Va., 650 F.Supp.2d 535, 541 (S.D.W. Va. 2009)).

Erie draws a fine distinction between the reference to a "commercially reasonable offer" in the Verified Amended Complaint and the requirement that Erie pay "Actual Cash Value" reflecting "fair market value, age and condition of the property at the time of the 'loss.'" Erie's Opp. 4–5. In evaluating a motion to dismiss under Rule 12(b)(6), the court must "draw[] all reasonable . . . inferences from th[e] facts in the plaintiff's favor . . ." Edwards, 178 F.3d at 244. The imprecise reference to a "commercially reasonable offer" will not defeat plaintiff's Count I claim for breach of contract when the complaint directly refers to the "Actual Cash Value" requirement. Id. ¶¶ 9, 21, 23. The use of the term, "commercially reasonable offer," in Count I is mere surplusage. Moreover, plaintiff corrects this purported defect by removing

the reference to a "commercially reasonable offer" under Count I in the Second Amended Complaint.

Erie also argues for the first time in its reply to the motion to dismiss that plaintiff fails to state a claim for breach of contract because under the insurance policy Erie "was required to make an offer and did make an offer." Erie's Reply 4. While the court does not generally consider arguments made for the first time in a reply, the court observes that plaintiff has plausibly alleged that Erie's offer did not comply with the insurance policy. Accordingly, the court does not find Count I futile.

For similar reasons, Erie asserts that plaintiff cannot sustain her Count II bad faith claim under <u>Hayseeds v. State Farm Fire and Cas. Co.</u>, 352 S.E.2d 73 (W. Va. 1986). <u>See</u> Erie's Mem. 8. Syllabus Point 1 of <u>Hayseeds</u> provides as follows:

> Whenever a policyholder substantially prevails in a property damage suit against its insurer, the insurer is liable for: (1) the insured's reasonable attorneys' fees in vindicating its claim; (2) the insured's damages for net economic loss caused by the delay in settlement, and damages for aggravation and inconvenience.

Syl. Pt. 1, <u>Hayseeds</u>, 352 S.E.2d at 74. Erie maintains that plaintiff cannot bring a bad faith claim under <u>Hayseeds</u> if plaintiff cannot "substantially prevail" on her breach of

contract claim.  See Erie's Mem. 8.  Inasmuch as plaintiff states a claim for breach of contract, Count II is not futile either.

Finally, Erie argues that plaintiff's Count III allegation of unfair trade practices is barred by a one-year statute of limitations.  See W. Va. Code § 55-2-12(c).  The parties agree that claims involving unfair settlement practices under the West Virginia Unfair Trade Practices Act ("UTPA") are governed by the one-year statute of limitations.  See Syl. Pt. 1, Wilt v. State Auto. Mut. Ins. Co., 506 S.E.2d 608, 608 (W. Va. 1998) ("Claims involving unfair settlement practices that arise under the [UTPA] are governed by the one-year statute of limitations set forth in West Virginia Code § 55-2-12(c) (1994).").  The general rule in West Virginia is that "a cause of action accrues . . . when a tort occurs."  Syl. Pt. 2, Gaither v. City Hosp., Inc., 487 S.E.2d 901, 903 (W. Va. 1997) (citation omitted).  An exception to the rule arises in the case of a continuing tort, which "requires a showing of repetitious, wrongful conduct."  Ricottilli v. Summersville Mem'l Hosp., 425 S.E.2d 629, 632 (W. Va. 1992) (citation omitted). In such a case, the cause of action accrues, and the statute of limitation resets, each time the wrongful act re-occurs.  See id. at 632-33.  Notably, "a wrongful act with consequential continuing

damages is not a continuing tort." Id. at 632 (citation omitted).

Here, the original Petition alleged that Mr. Walker "states his offer was made 2 years ago." See Pet. In response in opposition to Erie's motion to dismiss, plaintiff argues that the offer to resolve this matter was made for the last time on May 29, 2018, which was one year prior to when the Petition was filed on April 26, 2019. Pl.'s Resp. 2. Yet, the allegation that the "offer was repeated several times with on or about May 29, 2018 being the date the last time the offer was made" was only included in the proposed amended complaints after the statute of limitations had expired. Second Am. Compl. ¶¶ 15–16. Plaintiff concedes that the original offer was made two years prior to the filing of the Petition. See Pl.'s Resp. 2.

Next, plaintiff argues that the continuing tort doctrine applies because "the offers to settle this matter for less than ACV had been made continuously for two years." Pl.'s Resp. 2. The mere fact that Erie made the same offer multiple times does not transform its actions into a continuing tort. The "continuing tort" doctrine pertains to "events, which for all practical purposes are identical, occur repeatedly, at short intervals, in a consistent, connected, rhythmic manner." DeRocchis v. Matlack, Inc., 460 S.E.2d 663, 669 n.4 (W. Va.

1995)).  In Noland v. Virginia Ins. Reciprocal, the West Virginia Supreme Court of Appeals relied favorably on a case that rejected a policyholder's argument that an "insurer's continuous refusal to [provide coverage] amounted to a continuing tort."  686 S.E.2d 23, 38 (W. Va. 2009) (citing Adamski v. Allstate Ins. Co., 738 A.2d 1033 (Pa. Super. Ct. 1999)).

Later cases have applied Noland to preclude the application of the continuing tort doctrine to similar types of UTPA claims.  See Hoh v. Standard Ins. Co., No. 2:17-CV-01425, 2017 WL 2469237, at *8 n.9 (S.D.W. Va. June 7, 2017); Elliott v. AAA Ins., No. 5:15CV146, 2016 WL 2766651, at *4 (N.D.W. Va. May 12, 2016).  Plaintiff's UTPA claim stems from the failure to make an offer reflecting Actual Cash Value pursuant to the terms of the insurance policy.  This harm accrued when the tort originally occurred two years prior to the filing of this suit.  Thus, plaintiff filed her original Petition after the statute of limitations had expired as to what is now presented as Count III.  Therefore, the court finds that Count III is barred by the statute of limitations.

Finally, the Verified Amended Complaint filed on October 17, 2019 and the Second Amended Complaint filed on November 14, 2019 both add Mr. Walker as a defendant for the

first time. Neither party has addressed the diversity jurisdictional issue that arises when both the plaintiff and one of the proposed defendants, Mr. Walker, are residents of West Virginia. Plaintiff is a resident of Sissonville, West Virginia and Mr. Walker is a resident of Saint Albans, West Virginia. See Second Am. Compl. ¶¶ 1, 4. Unless plaintiff informs the court on or before March 23, 2020 that she chooses to strike from the Second Amended Complaint Mr. Walker, who is not a necessary party to this action against Erie, the court will deny the motion to amend. Until then, the court will defer ruling on Erie's motion to dismiss.

## IV. Conclusion

For the foregoing reasons, it is hereby ORDERED that plaintiff must inform the court on or before March 23, 2020 whether or not she chooses to strike Mr. Walker from the Second Amended Complaint.

The Clerk is directed to transmit copies of this order to all counsel of record and any unrepresented parties.

ENTER: March 12, 2020

John T. Copenhaver, Jr.
Senior United States District Judge